## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SEAN JORDAN** | : | |
| **14 Lunny Court** | : | |
| **Carbondale, PA 18407** | : | |
| **Plaintiff** | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **DELAWARE AND HUDSON RAILWAY** | : | |
| **COMPANY, INC., d/b/a CANADIAN** | : | |
| **PACIFIC RAILWAY** | : | **No.** |
| **200 Clifton Corporate Parkway** | : | |
| **Clifton Park, NY 12065, and** | : | |
| | : | |
| **NORDCO, INC.** | : | |
| **254 West Forest Hill Avenue** | : | |
| **Oak Creek, WI 53154** | : | |
| **Defendants** | : | |
| | : | |

## <u>COMPLAINT</u>

### <u>Jurisdiction and Venue</u>

1. This is a claim, *inter alia*, pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. §51, *et seq*, as amended.

2. Defendant, Delaware and Hudson Railway Compnay, Inc. (D&H), is an interstate common carrier of freight for hire in the United States and, upon information and belief, operates within the Middle District of Pennsylvania. *See* https://www.cpr.ca/en/choose-rail-site/Documents/cp-network-map-2020.pdf, the current Canadian Pacific Railroad track map.

3. 45 U.S.C. §56 confers Federal Court jurisdiction over this matter.

4. Plaintiff Sean Jordan is a citizen of the Commonwealth of Pennsylvania and resides at 14 Lunny Court, Carbondale, PA, within the Middle District of Pennsylvania.

5.     Defendant, D&H, is a corporation organized and existing under the laws of the State of Delaware with a stated principal place of business at 200 Clifton Corporate Parkway, Clifton Park, NY 12065.

6.     It is believed and therefore averred that D & H primarily operates out of the United States headquarters of its corporate parent, the Canadian Pacific Railway, which is located in Minneapolis, Minnesota.

7.     Defendant, Nordco, Inc. (Nordco), is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 245 West Forrest Hill Avenue, Oak Creek, Wisconsin.

8.     The citizenship of plaintiff and defendants is diverse.

9.     The matter in controversy in this action exceeds $75,000.

10.     Therefore, 28 U.S.C. §1332(a)(1) also confers Federal Court jurisdiction over this matter.

11.     Both defendants were at all times relevant to this suit registered to do business in the Commonwealth of Pennsylvania and therefore have voluntarily consented to personal jurisdiction in the Commonwealth of Pennsylvania and this Federal court. *See* 42 Pa.C.S.A. §5301(a)(2) and *Gorton v. Air & Liquid Systems Corporation*, 303 F.Supp.3d 278, 296 (M.D.Pa. 2018)("Not surprisingly, Pennsylvania courts have interpreted . . . [section 5301(a)(2)] as meaning exactly what it says: that Pennsylvania courts have general jurisdiction over a corporation that has 'qualif[ied] as a foreign corporation' under the state registration statute.").

12.     Venue in the Middle District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391(b)(1) & (c)(2) ("an entity . . . shall be deemed to reside, if a defendant, in any judicial district

in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .").

**Background**

13.     On April 22, 2020, Plaintiff, Sean Jordan, a 45-year old railroad mechanic, suffered a massive crush injury when his right dominant hand and arm were pulled into an unguarded crush point on a piece of railroad equipment called a "Bulk Automated Anchor Machine" ("BAAM"). The BAAM was manufactured in January 2011 and bears a serial number of 690078-11.

14.     This is a photograph of the BAAM that injured Mr. Jordan:



15.     At the time of his injury and at all relevant times, Mr. Jordan, was employed as a mechanic by defendant, D & H.

16.     At the time of his injury and at all relevant times, Mr. Jordan, was working in the course and scope of his employment with D & H on D & H tracks located south of Plattsburgh, NY.

17.     When laying railroad track, a BAAM applies anchors directly to the rail base next to the railroad tie in order to secure the track.

18.     At the time of Mr. Jordan's injury and at all relevant times, the BAAM was a "roadway maintenance machine" within the meaning of the Federal Roadway Worker Protection Rules (RWPR). *See* 49 C.F.R. § 214.7.

19.     At the time of his injury and at all relevant times, Mr. Jordan was a "roadway worker" within the meaning of the RWPR. *See* 49 C.F.R. § 214.7.

20.     Under the RWPR, D&H had a variety of safety obligations to its employees including, but not limited to:

    a.  Adopting a program that contains specific rules for protecting roadway workers. *See* 49 C.F.R. § 214.317;

    b.  Providing initial and recurrent training to roadway workers on the on-track safety rules and procedures that they are required to follow. *See* 49 C.F.R. § 214.343;

    b.  When assigning a duty to a roadway worker that calls for that employee to "foul a track" (*i.e.* to be within four feet of the field side of the near running rail or to be in a position where he could be struck by moving on-track equipment), providing the employee with an on-track safety job briefing that, at a minimum, includes the following: information on the means by which on-track safety is to be provided for each track identified to be fouled; instruction on each on-track safety procedure to be followed; and a discussion of the nature of the work to be performed and the characteristics of the work location to ensure safety compliance. *See* 49 C.F.R. § 214.315;

    c.  Including in its on-track safety program specific provisions for the safety of roadway workers who operate or work near roadway maintenance machines. Those provisions shall address establishment and issuance of safety procedures both for general application and for specific types of machines; communication between machine operators and roadway workers assigned to work near or on roadway maintenance machines; and space between machines and roadway workers to prevent personal injury. *See* 49 C.F.R. § 214.341.

21.     The RPWR additionally prescribes minimum safety standards for on-track roadway maintenance machines and makes clear that an employer may prescribe additional or more stringent safety standards that are consistent with the RPWR and its attendant rules. *See* 49 C.F.R. § 214.501.

22.      To the extent that the RPWR does not address a working condition that involves protection of employees engaged in roadway maintenance, the RPWR and its attendant rules adopt by reference regulations of the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA"). *See* 49 C.F.R. § 214.501.

23.      With respect to guarding of machinery, OSHA regulations require that "[o]ne or more methods of machine guarding <u>shall</u> be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are barrier guards, two-hand tripping devices, electronic safety devices, *etc*.  Guards shall be affixed to the machine where possible and secured elsewhere if for any reason attachment to the machine is not possible." *See* 29 C.F.R. § 1910.212 (emphasis added).

**The Accident**

24.      On April 22, 2020, the BAAM that injured Mr. Jordan was not effectively placing anchors.

25.      Mr. Jordan's supervisor/foreman, Tom Rode, who is a D & H employee, asked Mr. Jordan to help investigate why the BAAM was not working.

26.      Mr. Jordan was directed to walk next to the BAAM while it was operating to look at the anchors dropping and try to diagnose the problem.

27.      Mr. Rode observed the process from on top of a platform on the BAAM next to the entrance to the cab.

28.      Seated in the cab was the BAAM's operator Chris Miller, also a D & H employee.

29.     In order to perform his task, Mr. Jordan was required to walk on uneven ballast[1] very close to the BAAM while the BAAM moved intermittently on the tracks.

30.     The ballast in the area where Mr. Jordan was assigned to work was uneven due to recent track-laying activity at the site; ballast had been piled along the side of the track by a "cribber," which temporarily exposes ties so anchors can be placed.

31.     Though Mr. Jordan's supervisor knew or should have known that Mr. Jordan's assignment would put him in a position to foul the tracks – and that the uneven ballast posed an additional hazard that could expose Mr. Jordan to contact with the unguarded BAAM – Mr. Jordan was not given an on-track safety briefing to alert him to the specific dangers associated with his assignment, in particular the danger posed by the unguarded BAAM (in violation of 49 C.F.R. § 214.315).

32.     D&H likewise had established no specific written safety procedures for roadway workers assigned to perform BAAM maintenance or who are required to work close to a moving, unguarded railroad maintenance machine (in violation of 49 C.F.R. § 214.34).

33.     The BAAM has a powerful "work head" that moves up and down, creating a highly dangerous crush point.

34.     This crush point was completely unguarded, in violation of 49 C.F.R. § 214.501 and 29 C.F.R. § 1910.212.

35.     The area where Mr. Jordan was walking – directly in front of the work head – is difficult or impossible for a BAAM operator to see while seated in the cab.

36.     The BAAM, itself, moves forward with abrupt stops and starts as it advances along the track.

---

[1] "Ballast" is large rocks, typically granite, upon which railroad ties are laid.

37.     This combination of factors – an unguarded crush point, uneven terrain, poor operator visibility, and sudden machine movements – created a highly dangerous situation for any nearby worker and in particular someone trying to observe the placement of the anchors.

38.     While Mr. Jordan was observing the anchors drop, as instructed, he lost his balance on the uneven ballast as the machine moved and he fell toward the BAAM.

39.     As Mr. Jordan fell, his leg contacted the narrow metal platform in front of the work head, further upsetting his balance and causing him to continue falling toward the BAAM's unguarded crush point created by the movement of the work head and its proximity to the fixed rigid frame.

40.     Mr. Jordan's glove was caught in the work head which was moving up, pulling his arm inside.  This is a photo of the glove, taken after the accident:



41.     The operator of the machine could not see that Mr. Jordan fell and did not disengage the machine and lower the work head until the foreman, Mr. Rode, yelled to him in the cab after Mr. Jordan's arm was crushed.

42.     This resulted in a severe injury to Mr. Jordan's hand and arm while stuck inside the work head as it operated.

**COUNT I**
**NEGLIGENCE *PER SE***
**FEDERAL EMPLOYER'S LIABILITY ACT (FELA), 45 U.S.C. §51, *et seq*.**
**SEAN JORDAN v. D & H**

43.     Plaintiff realleges and incorporates by reference each and every preceding paragraph as though set forth fully herein.

44.     At all times relevant hereto, D&H negligently acted and/or failed to act through its officers, employees, agents, servants and/or workers.

45.     D&H has long known the tremendous hazards that railroad workers face – as well its responsibilities, pursuant to Federal laws and regulations, for providing reasonably safe working conditions for its employees.

46.     The purpose of the Roadway Worker Protection Rules is to prevent accidents and casualties to railroad employees who, like Mr. Jordan, are engaged in roadway maintenance. *See* 49 C.F.R. §§214.1, 214.301, 214.501.

47.     As outlined above, D&H violated the RPWR by:

a.  Assigning a duty to Mr. Jordan that called for him to foul the track without providing an on-track safety briefing that alerted him to the specific dangers associated with the assignment. *See* 49 C.F.R. § 214.315;

b.  Providing Mr. Jordan with no written safety procedures that (1) specifically related to maintenance of the BAAM and (2) established guidelines for working in close proximity to a moving, unguarded railroad maintenance machine while walking on uneven terain. *See* 49 C.F.R. § 214.341;

c.  Providing inadequate training to Mr. Jordan regarding on-track safety rules and procedures that he was required to follow. *See* 49 C.F.R. § 214.343;

d.  Providing no guarding for the crush point in the BAAM work head. See 49 C.F.R. § 214.501 and 29 C.F.R. § 1910.212.

8

48.     The serious injuries Mr. Jordan sustained on April 22, 2020, and the associated losses described herein were a direct and proximate result of D & H's violation of the RWPR.

49.     As a result of D&H's negligence *per se*, Mr. Jordan has in the past and will in the future require medical, surgical, therapeutic and other care and treatment.

50.     As a further result of D&H's negligence *per se*, Mr. Jordan has incurred and will continue to incur substantial medical and life-care expenses.

51.     As a further result of D&H's negligence *per se*, Mr. Jordan has incurred and will continue to incur substantial lost earnings and lost earning capacity.

52.     As a further result of D&H's negligence *per se*, Mr. Jordan has endured and will continue to endure significant physical and emotional, pain, suffering, humiliation and distress, and loss of life's pleasures.

53.     As a further result of D&H's negligence *per se*, Mr. Jordan has endured and will continue to endure permanent disfigurement and loss of function.

**WHEREFORE**, plaintiff, Sean Jordan, demands of defendant, D&H, compensatory damages together with delay damages, interest, costs of suit and such other relief that the Court deems just.

**COUNT II**
**NEGLIGENCE**
**FEDERAL EMPLOYER'S LIABILITY ACT (FELA), 45 U.S.C. §51, *et seq*.**
**SEAN JORDAN v. D & H**

54.     Plaintiff realleges and incorporates by reference each and every preceding paragraph as though set forth fully herein.

55.     At all times relevant hereto, D&H negligently acted and/or failed to act through its officers, employees, agents, servants and/or workers.

56.     D&H has long known the tremendous hazards that railroad workers face – as well its responsibilities, pursuant to Federal laws and regulations, for providing reasonably safe working conditions for its employees.

57.     At all relevant times, D&H was aware of the serious risk of injury or death posed by requiring its employees to work in close proximity to a moving roadway maintenance machine – a hazard exacerbated in this case by an unguarded crush point, uneven ballast that covered the approaches to defendant's tracks, and poor operator visibility.

58.     At all relevant times, D&H was aware or should have been aware that the unguarded crush point created by the BAAM work head could cause serious injury or death to its employees.

59.     D & H employees, including rail gangs and mechanics, frequently must walk near the BAAM when it is operating.

60.     In direct contravention of federal railway and occupational safety and health standards that govern its conduct, D&H explicitly exposed Mr. Jordan to these potentially lethal hazards without warning him of the hazards, without training him about the hazards, and without taking any steps to guard against the hazards.

61.     Defendant D & H was negligent, grossly negligent, and demonstrated a reckless indifference to the safety of plaintiff Sean Jordan.

62.     D & H's negligence, gross negligence, carelessness, and reckless disregard for safety consisted, *inter alia,* of the following acts and omissions:

> a.  Failing to develop and maintain a reasonable comprehensive program to promote the safety of its workers;
>
> b.  Failing to promulgate and implement reasonable and appropriate safety policies, procedures and protocols;

c.  Failing to fulfill its undertaking to promulgate and monitor procedures that would safely govern the operation and maintenance of the BAAM.

d.  Failing to fulfill its undertaking to promulgate, monitor and provide training to its employees with regard to the operation and maintenance of the BAAM;

e.  Failing to provide a guard or suitable enclosure to prevent or reduce the risk of injury of contact with moving parts of the BAAM, including contact with the crush point created by the BAAM's work head;

f.  Purchasing and assigning its employees to use and maintain a piece of railway equipment that was not adequately guarded, including not complying with OSHA guarding requirements;

g.  Assigning Mr. Jordan to work in close proximity to the moving BAAM and its exposed work head when there was uneven terrain and the BAAM has poor operator visibility – all without alerting Mr. Jordan to the specific dangers associated with the assignment, either through a job safety briefing or otherwise;

h.  Violating Roadway Worker Protection Rules that required D&H to provide Mr. Jordan with an on-track safety briefing before he began the accident assignment;

i.  Violating Roadway Worker Protection Rules that required D&H to promulgate safety protocols both generally and specifically for the roadway maintenance machine involved in Mr. Jordan's accident;

j.  Violating Roadway Worker Protection Rules by failing to adequately train to Mr. Jordan and his supervisors about on-track safety rules and procedures that they were required to follow;

k.  Violating Roadway Worker Protection Rules and OSHA regulations by failing to guard the crush point created by the BAAM's work head;

l.  Installing a platform in front of the BAAM work head which increased the risk that a falling worker would contact the work head;

m.  Failing to train Mr. Jordan and other D & H mechanics how to adjust the BAAM to use different anchor types, resulting in the BAAM malfunctioning;

n.  Keeping the BAAM in service when it was known to be malfunctioning;

o.  Imposing unreasonable time restrictions and pressure on mechanics to keep machines like the BAAM in service;

11

p.  Failing to provide Mr. Jordan with a reasonably safe place to work, for all of the reasons stated above.

63.     The serious injuries Mr. Jordan sustained on April 22, 2020, and the associated losses described herein were a direct and proximate result of the negligence, carelessness and reckless indifference of D & H and its agents, servants and employees.

64.     As a result of D&H's misconduct, Mr. Jordan has in the past and will in the future require medical, surgical, therapeutic and other care and treatment.

65.     As a further result of D&H's misconduct, Mr. Jordan has incurred and will continue to incur substantial medical and life-care expenses.

66.     As a further result of D&H's misconduct, Mr. Jordan has incurred and will continue to incur substantial lost earnings and lost earning capacity.

67.     As a further result of D&H's misconduct, Mr. Jordan has endured and will continue to endure significant physical and emotional, pain, suffering, humiliation and distress, and loss of life's pleasures.

68.     As a further result of D&H's misconduct, Mr. Jordan has endured and will continue to endure permanent disfigurement and loss of function.

**WHEREFORE**, plaintiff, Sean Jordan, demands of defendant, D&H, compensatory damages together with delay damages, interest, costs of suit and such other relief that the Court deems just.

## COUNT III
## NEGLIGENCE
## SEAN JORDAN v. NORDCO

69.     Plaintiff realleges and incorporates by reference each and every preceding paragraph as though set forth fully herein.

12

70.     At all times relevant hereto, Nordco negligently acted and/or failed to act through its officers, employees, agents, servants and/or workers.

71.     Nordco designed, manufactured, and sold the BAAM that injured Mr. Jordan.

72.     Upon information and belief, the BAAM was sold by defendant Nordco to D&H without a barrier guard or any other type of guard to prevent employee exposure to the highly dangerous crush point created by the BAAM's work head.

73.     At the time Norco designed, manufactured and sold the BAAM involved in Mr. Jordan's accident, it was technically and economically feasible to install a guard to prevent any access to the crush point where he was injured.

74.     In the condition as sold by Nordco, the BAAM was defective because, *inter alia*, it lacked a guard which would protect users from injury by preventing contact with moving parts, including crush points and it lacked appropriate warnings concerning the risks and dangers associated with the exposed work head and unguarded crush point.

75.     The BAAM also was defective because Nordco offered it with a platform in front of the work head that increased the risk of exposure to the crush point.

76.     As a manufacturer and seller of roadway maintenance machines like the BAAM, Nordco owed a duty to those who would use or ordinarily come into contact with its machinery and equipment to use due care in designing, manufacturing, labeling and selling their machinery and equipment.

77.     At all times relevant hereto, Nordco knew, or through the exercise of reasonable care should have known, that its BAAM was unsafe for its intended or reasonably foreseeable uses and purposes.

78.     At all times relevant hereto, Nordco knew, or through the exercise of reasonable

13

care should have known, that plaintiff Sean Jordan - or a similarly situated worker - would be working in close proximity to its BAAM, and the absence of reasonable and necessary safety features would result in serious injury.

79.     Nordco knew or should have known that its BAAM was unsafe and that its unsafe condition could and would result in serious injury but ignored the problem, for which there was an easy and inexpensive solution.

80.     At the time of the accident, the BAAM was being operated and used in a manner which was normal and foreseeable and was being used for the intended purpose for which it had been designed, manufactured and sold.

81.     In the design, manufacture, advertising, marketing, sale, and/or supply of the BAAM, Nordco was negligent, grossly negligent and demonstrated a reckless disregard for safety.

82.     The negligence, gross negligence, and reckless disregard for safety of Nordco consisted, *inter alia*, of the following acts and omissions:

a.  Designing, manufacturing and selling the BAAM without guards or suitable enclosures to prevent or reduce the risk of injury from contact with the BAAM's moving parts, including contact with the crush point created by the work head;

b.  Deliberately violating universally recognized engineering and safety principles that were established more than a century ago that all potential crush points should be guarded;

c.  Designing, manufacturing and selling the BAAM without incorporating sufficient safety mechanisms to prevent the moving parts of the BAAM from catching and drawing in a worker's limbs;

d.  Designing, manufacturing and selling the BAAM without  reasonable and necessary safety devices and guards;

e.  Designing, manufacturing and selling the BAAM so that it lacked proper safeguards, failsafe devices, warning devices or other such features which would have prevented injury to plaintiff Sean Jordan;

f.  Designing, manufacturing and selling the BAAM in a condition unsafe for its foreseeable use and work environment by, *inter alia*, selling the BAAM with a

platform in front of the work head that increases the risk that someone may contact moving parts of the machine, including the unguarded work head;

g.   Designing, manufacturing, fabricating, building and selling the BAAM without reasonable care;

h.   Selling or otherwise placing into the stream of commerce an unsafe BAAM;

i.   Designing, manufacturing and selling the BAAM without  properly testing the BAAM to determine whether it could be used without causing serious injuries;

j.   Ignoring and failing to consider in the design of the BAAM accident reports and patterns of accidents for its own BAAM and for similar products made by other manufacturers;

k.   Designing, manufacturing and selling the BAAM without  adequately identifying, investigating, recording and incorporating in its design, manufacture and sale of its BAAM the knowledge learned from other accidents;

l.   Inadequately assessing the risk of injuries and the severity of injuries occurring as the result of its design of the BAAM;

m.   Failing to assess the hazards and risks of injury associated with the foreseeable uses and misuses of the BAAM;

n.   Designing, manufacturing and selling the BAAM without exercising due care in the safety analysis, hazard analysis, and product design of the BAAM;

o.   Designing, manufacturing and selling the BAAM without determining or eliminating to the fullest extent possible risks of injury associated with the BAAM;

p.   Providing with the sale of its product insufficient warnings as to the reasonably foreseeable risk of injury inherent in the BAAM and the reasonably foreseeable incidents of severe accidents associated with the use of defendant's product;

q.   Inadequately warning users of the BAAM of the dangers attendant on use of the BAAM, including but not limited to the crush points created by its moving parts and the absence of guards surrounding those parts;

r.   Giving insufficient instructions so that the ultimate purchasers and users of the BAAM would not have sufficient information, preparation and training in the safe and proper use and maintenance of the BAAM;

s.   Providing insufficent warnings to Mr. Jordan's employer of the foreseeable dangers inherent in the use and operation of the BAAM;

t.   Otherwise failing to use or exercise due care under the circumstances.

15

83.     As a result of Nordco's negligence, gross negligence, and reckless disregard for safety, Mr. Jordan has in the past and will in the future require medical, surgical, therapeutic and other care and treatment.

84.     As a further result of Nordco's negligence, gross negligence, and reckless disregard for safety, Mr. Jordan has incurred and will continue to incur substantial medical and life-care expenses.

85.     As a further result of Nordco's negligence, gross negligence, and reckless disregard for safety, Mr. Jordan has incurred and will continue to incur substantial lost earnings and lost earning capacity.

86.     As a further result of Nordco's negligence, gross negligence, and reckless disregard for safety, Mr. Jordan has endured and will continue to endure significant physical and emotional, pain, suffering, humiliation and distress, and loss of life's pleasures.

87.     As a further result of Nordco's negligence, gross negligence, and reckless disregard for safety, Mr. Jordan has endured and will continue to endure permanent disfigurement and loss of function.

88.     The serious injuries Mr. Jordan sustained on April 22, 2020, and the associated losses described herein were a direct and proximate result of the negligence, gross negligence and reckless indifference of Nordco and its agents, servants and employees.

**WHEREFORE**, Plaintiff, Sean Jordan, demands of defendant, Nordco, compensatory and punitive damages together with delay damages, interest, costs of suit and such other relief that the Court deems just.

**COUNT IV**
**STRICT LIABILITY**
**SEAN JORDAN v. NORDCO**

89.     Plaintiff, Sean Jordan, realleges and incorporates by reference each and every preceding paragraph as though set forth fully herein.

90.     Nordco is a supplier and its Bulk Automated Anchor Machine is a product within the meaning of §402(A) of the Restatement (Second) of Torts.

91.     At the time of Mr. Jordan's accident, Defendant's BAAM was being used in a foreseeable manner and for a foreseeable and intended use and purpose.

92.     At the time of the accident, Mr. Jordan was an intended user of the BAAM.

93.     The BAAM was expected to and did reach Plaintiff's employer, and plaintiff himself, without substantial change from the condition in which it was supplied.

94.     The Defendant's BAAM was defectively designed because:

   a.  It lacked guards or enclosures to prevent or reduce the risk of injury of contact with the BAAM's moving parts, including contact with the crush point created by the work head;

   b.  It lacked sufficient safety mechanisms to prevent the BAAM's moving parts from catching and drawing in a worker's limbs;

   c.  It was sold with a platform in front of the work head that actually increased the risk of unintended contact with the work head, both because of its positioning and because its grab bars are unsteady;

   d.  It lacked sufficient warnings to alert users to the foreseeable dangers inherent in the use and maintenance of the BAAM, including the crush points created by the BAAM's work head and by the absence of guards surrounding the work head;

   e.  It lacked instructions so that the ultimate purchasers and users of the BAAM would have sufficient information, preparation and training in the safe and proper use and maintenance of the unguarded BAAM;

95.     At the time of sale of the Defendant's BAAM, it was economically and technically feasible to install a guard to prevent any access to the crush point at which Mr. Jordan was injured.

17

96.     The serious injuries Mr. Jordan sustained on April 22, 2020, and the associated losses described herein were a direct and proximate result of the defective and unsafe condition of the subject BAAM as supplied by Nordco and its agents, servants and employees.

97.     As a further result of Nordco's breach of its duties under §402A, Restatement of Torts (Second), plaintiff has incurred and will continue to incur substantial medical and life care expenses.

98.     As a further result of Nordco's breach of its duties under §402A, Restatement of Torts (Second), plaintiff has incurred and will continue to incur substantial lost earnings and lost earning capacity.

99.     As a further result of Nordco's breach of its duties under §402A, Restatement of Torts (Second), plaintiff has endured and will continue to endure significant physical and emotional, pain, suffering, humiliation and distress, and loss of life's pleasures.

100.    As a further result of Nordco's breach of its duties under §402A, Restatement of Torts (Second), Mr. Jordan has endured and will continue to endure permanent disfigurement and loss of function.

**WHEREFORE**, Plaintiff, Sean Jordan, demands of Defendant, Nordco, compensatory and punitive damages in excess of the jurisdictional arbitration limit, together with delay damages, interest, costs of suit and such other relief the Court deems just.

**COUNT V**
**BREACH OF WARRANTIES**
**SEAN JORDAN v. NORDCO**

101.    Plaintiff, Sean Jordan, realleges and incorporates by reference each and every preceding paragraph as though set forth fully herein.

102.    In designing, manufacturing, assembling, marketing, promoting, selling and/or otherwise introducing into the stream of commerce the BAAM, Nordco expressly and impliedly warranted that the BAAM was merchantable, fit, suitable and safe for the ordinary and particular purposes for which it was sold, manufactured, and supplied, and that it was free from defects.

103.    Nordco expressly affirmed, promised and warranted that the BAAM was safe, fit, suitable, and safe for the ordinary and particular purposes for which it was sold, manufactured, supplied, and/or provided product descriptions affirming the product's safety, suitability and fitness.

104.    Nordco impliedly warranted that the BAAM was fit for the ordinary purposes for which such machines are used and that it was safe for its intended use.

105.    Nordco knew and had reason to know the particular purpose for which the BAAM would be required and used by D&H and its employees, and D&H relied upon Nordco's knowledge, skill and judgment in selecting and furnishing suitable goods; Nordco impliedly warranted that the product was fit for its particular purpose.

106.    Nordco breached its express and implied warranties in that the BAAM was not merchantable, was not fit and safe for the ordinary and particular purposes for which it was supplied by the Defendant, and was defective.

107.    As a direct and proximate result of Nordco's breach of its express and implied warranties, plaintiff Sean Jordan sustained the losses described herein.

108.    Nordco was provided timely notice of the defect and plaintiff's injury.

**WHEREFORE**, Plaintiff, Sean Jordan, demands of defendant, Nordco, compensatory and punitive damages in excess of the jurisdictional arbitration limit, together with delay damages, interest, costs of suit and such other relief that the Court deems just.

## JURY DEMAND

Plaintiff, SEAN JORDAN, demands a trial by jury on all the legal issues raised in his Complaint.

**RAYNES LAWN HEHMEYER**

BY:     */s/ Charles P. Hehmeyer*
Charles P. Hehmeyer, Esquire
PA ID. No. 48167
cph@rayneslaw.com
Amber M. Racine, Esquire
PA ID. No. 208575
amracine@rayneslaw.com
1845 Walnut Street, 20th Floor
Philadelphia, PA 19103
(215) 568-6190 – Telephone
*Attorneys for Plaintiff – Sean Jordan*

Dated:  October 13, 2020